BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JOHN H. HEMANN (CABN 165823)
JOSEPH E. SPRINGSTEEN (DCBN 474317)
LAURA VARTAIN HORN (CABN 258485)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6831
    Laura.Vartain@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 16-0172 JD |
| Plaintiff, | UNITED STATES' RESPONSE TO DEFENDANT'S CLOSING ARGUMENT |
| v. | Hearing Date: November 9, 2017 |
| JING ZENG, | Time: 10:00 am |
| Defendant. | Court: The Hon. James Donato |

UNITED STATES' RESPONSE TO DEFENDANT'S CLOSING ARGUMENT
CR 16-172 JD

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................1

II.  DEFENDANT'S KNOWING TRANSMISSIONS FALL SQUARELY WITHIN
     THE STATUTE. ..................................................................................................................1

III. HAVING DAMAGED THE COMPUTER, DEFENDANT NOW ASKS THE
     COURT TO REWRITE THE CFAA TO REQUIRE MORE THAN IT DOES. ..................5

IV.  THE DAMAGE DEFENDANT CAUSED IS EXACTLY WHAT HE INTENDED. ..................7

V.   CONCLUSION..................................................................................................................10

## I. INTRODUCTION

Defendant's closing argument proposes that the Court rewrite the CFAA with respect to each element in order to put defendant's conduct outside its ambit. He asks the Court to take unambiguous terms and find them vague, but the statute is not ambiguous as to transmission, damage, or intent. Because the statute is not ambiguous, neither defendant's statutory arguments nor his invocation of the rule of lenity helps him escape criminal liability.[1] Defendant also misconstrues key cases to force them to stand for propositions about the CFAA that they do not. Most significantly, defendant states that the Seventh Circuit has held that deletion of files is not criminal, and he repeatedly puts in quotations a holding that is nowhere in the case.

Properly focused on the language of the statute, the relevant cases, and the facts of this case applied to the law, defendant is guilty because his conduct as proved at trial satisfies each element of 18 U.S.C. § 1030(a)(5)(A).

## II. DEFENDANT'S KNOWING TRANSMISSIONS FALL SQUARELY WITHIN THE STATUTE.

Defendant's use of commands to erase the MZ laptop and reinstall a new operating system constitute transmissions within the meaning of the CFAA. It involved transmission of a series of commands, some internal and others external. Defendant's series of internal commands involved in erasing the MZ laptop, standing on its own, is also a transmission. Therefore, the answer to defendant's question posed to the Court: "whether use of computer's native commands constitutes 'transmission' for the purposes of the CFAA" (Dkt. 105 at 8), is that it does, on the facts of this case.

Defendant's argument that transmission requires an external element is unsupported by the statute or case law. The plain text of the statute, its structure, and the legislative history all support the United States' argument that defendant's transmissions, including the purely internal ones involved in erasing the SSD, are covered.

Defendant contends that the "text and purpose" of the statute require an external transmission.

---

[1] *United States v. Nosal*, 844 F.3d 1025, 1035 at n.6 (9th Cir. 2016) (no rule of lenity where CFAA not ambiguous).

UNITED STATES' RESPONSE TO DEFENDANT'S CLOSING ARGUMENT
CR 16-172 JD                                1

To the extent "external" and "internal" have any relevance to Section 1030(a)(5), it is with respect to the user's relationship to the protected computer, and not with respect to whether the transmission comes from a source external or internal to the protected computer.

The plain language of the statute says nothing about an external transmission. It requires a knowing transmission of a "program, information, code, or command." The statute does not specify where the program, information, code, or command must come from or where it must go, and instead limits the transmission by requiring that it be accomplished knowingly.[2] The essence of the criminal act is that the protected computer receives the program, information, code, or command via a knowing transmission by the defendant.

Similarly, the purpose of the statute does not help defendant make the case that an external transmission is required, and in fact cuts against defendant. Defendant does not cite any case that stands for the position that the statutory purpose requires an external transmission. Against that lack of authority, the legislative history establishes that Congress knew how to distinguish between internal and external, and did that only with respect to the user's access to the protected computer:

> In sum, under the bill, insiders, who are authorized to access a computer, face criminal liability only if they intend to cause damage to the computer, not for recklessly or negligently causing damage. By contrast, outside hackers who break into a computer could be punished for any intentional, reckless, or other damage they cause by their trespass.

S. Rep. 104-357 (1995-1996). The text of the statute, and its purpose, manifested Congress' intent to ensure that insiders – persons who could be sitting at the protected computer when they caused the damage – are liable when they act intentionally[3] to cause damage.

This congressional intent manifested in the language and structure of Section 1030(a)(5) to

---

[2] Transmission is not defined in the statute, but the term is not ambiguous. *Cf. Nosal*, 844 F.3d at 1035 ("without authorization" is not defined but is not ambiguous). "Transmit" has many definitions, all involving movement. For example, within the same dictionary, it is defined: (1) "To go or be conveyed to another person or place;" (2) "to cause (as light or force) to pass or be conveyed through space or a medium;" (3) "to admit the passage of'" and (4) to send out (a signal) either by radio waves or over a wire line." Webster's Third New International Dictionary (2002). Some of these definitions imply movement between separate places, and others do not. The common principle, and what applies to the statute, is that there is movement. Further, transmission must be read in the context of whether a code, command, program or information is being transmitted. A command can be transmitted locally and internally.

[3] Reckless and negligent actions by insiders are not criminal.

UNITED STATES' RESPONSE TO DEFENDANT'S CLOSING ARGUMENT
CR 16-172 JD                                    2

criminalize insiders who intend to cause damage is problematic for defendant, who relies extensively on cautionary tales suggesting that the Court must ensure that "innocuous" conduct by insiders does not fall under the CFAA.[4] Defendant says that the Court must use the transmission element to constrain the government against overreach, but the statutory language and the legislative history show that Congress ensured that "innocuous" conduct by insiders would not be criminal by requiring that the conduct be intentional, and not reckless or negligent:

> as amended, subsection 1030(a)(5)(A) would penalize, with a fine and up to 5 years' imprisonment, anyone who knowingly causes the transmission of a program, information, code or command and intentionally causes damage to a protected computer. This would cover anyone who intentionally damages a computer, regardless of whether they were an outsider or an insider otherwise authorized to access the computer.

S. Rep. 104-357 (1995-96). As the government has argued at length elsewhere, the two *mens rea* elements (knowledge and intent) prevent sweeping in "innocuous" conduct. It is not the *mode* of transmission that guards against overbreadth, but the requirement that the conduct be done knowingly (and, with respect to damage, intentionally). Therefore, neither the statutory text, nor its purpose as clearly expressed in the legislative history, furthers defendant's request that the Court hold that defendant's internal transmission of commands to erase the SSD of the MZ laptop is not enough.

*International Airport Centers, LLC v. Citrin,* 440 F.3d 419 (7th Cir. 2006), also does not help defendant. Defendant purposefully misreads and misquotes *Citrin* in order to argue that *Citrin* holds that the CFAA requires a transmission from an external source and so cannot reach his conduct. *Citrin* does not hold that an external source is required, and the reasoning and outcome of the case establish that defendant's conduct falls within Section 1030(a)(5).

As a threshold issue, *Citrin* underscores that "transmission" can be internal to a computer. The Court expressly found that hitting delete is a transmission: "pressing a delete or erase key *in fact transmits a command.*" *Citrin,* 440 F.3d at 419 (emphasis added).

---

[4] Defendant's conduct was not innocuous, even if disbelief is suspended to allow for the pornography story, so it seems that he is asking that the Court guard against some hypothetical government overreach and not on the facts of this case. In *Nosal II*, the Ninth Circuit also confronted a series of hypotheticals about government overreach, and the Court declined the invitations to decide the case in front of it based on hypothetical concerns not before it. *See generally Nosal,* 844 F.3d 1038.

UNITED STATES' RESPONSE TO DEFENDANT'S CLOSING ARGUMENT
CR 16-172 JD                                    3

Defendant incorrectly and misleadingly argues that the holding of *Citrin* was that "merely erasing a file from a computer is not a transmission." Dkt. 105 at 9, 16. This was not the holding in *Citrin*, this was the defendant's argument in *Citrin*.[5] These efforts to recast *Citrin* are unsurprising because at bottom, *Citrin* stands for the proposition that employees who intentionally erase data that would reveal their misconduct before returning their laptops to their employers are liable under Section 1030(a)(5). Citrin's and defendant Zeng's conduct were identical in purpose and effect. The only difference is that Citrin used a program, and loaded it to the employer's laptop using some mode unknown to the Court:

> If the statute is to reach the disgruntled programmer, which Congress intended…it can't make any difference that the destructive program comes on a physical medium, such as a floppy disc or CD.

*Id.* at 420. In short, Citrin and defendant Zeng accomplished the same ends,[6] both using modes of transmission covered by the statute, and each while sitting at their employer's computer:

|  | Type of Transmission | Mode of Transmission | Damage |
|---|---|---|---|
| **Citrin** (employee) | Eraser Program | Unknown | Deletion of all files |
| **Defendant** (employee) | Series of Commands | Internal | Deletion of all files |

Sidestepping these core similarities, defendant finds the only difference he can: unlike the computer at issue in *Citrin* that needed assistance to wipe itself, defendant was able to accomplish the same damage

---

[5] Although defendant repeatedly quotes *Citrin* as holding that "merely erasing a file from a computer is not a 'transmission,'" (Dkt. 105 at 9,12 16), the actual quotation is: "*Citrin argues that* merely erasing a file from a computer is not a 'transmission.'" *Id.* at 419 (italics added). The Court continued to reject Citrin's arguments and found his conduct covered by the CFAA. Nowhere does *Citrin* hold that merely erasing a file is not a transmission. The suggestion that "it might be stretching the statute too far . . . to consider any typing on a computer keyboard to be a form of 'transmission'" is obviously *dicta*. *Id*. Moreover, the actual evidence in this case shows far more than a little "typing," it shows the intentional entry of a lengthy series of commands designed to wipe the computer.

[6] In any event, the ultimate conduct found by the court to be criminal in *Citrin* – erasure of the contents of an entire computer – is precisely the same conduct defendant committed in this case. The Court described Citrin's damage: "Before returning the laptop to [his employer], he deleted all the data in it – not only the data that he had collected but also data that would have revealed to [his employer] improper conduct in which he engaged before he decided to quit." *Id.* at 419.

UNITED STATES' RESPONSE TO DEFENDANT'S CLOSING ARGUMENT
CR 16-172 JD                                                4

through the "native" commands of the MZ laptop.[7] Terming the erase function "native" is clever but not legally relevant. It is clever because it tends to suggest that the MZ laptop wiped itself. That is not at all what happened. Instead, the evidence at trial established that defendant took a series of complicated steps, beginning with "Command-R," and following various prompts that gave him the opportunity to back out of erasing the SSD. As already explained, it is legally irrelevant that the command was issued from the MZ laptop, causing damage to the same computer. The Court should reject defendant's efforts to require an external transmission, which is unsupported by the text, history, or case law.[8] Defendant's conduct plainly satisfies this element. His initiation of the "Command-R" function and the following steps to erase the SSD were done knowingly (and he repeatedly confirmed his intention to obliterate the SSD).

### III. HAVING DAMAGED THE COMPUTER, DEFENDANT NOW ASKS THE COURT TO REWRITE THE CFAA TO REQUIRE MORE THAN IT DOES.

Defendant also asks the Court to add a requirement to the damage element that is not found in the text of the statute and not supported by case law. Despite defendant's attempt to obfuscate the issue, damage under the CFAA is a straightforward concept, unambiguously defined in the statute itself: "*any impairment to the integrity or availability* of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8) (emphasis added).

Although the statute defines damage, defendant says that "the government must prove permanent deletion of something that has meaningful value to the owner." Dkt 105 at 20. That quite clearly is not what the statute says; defendant is simply concocting an element. The law does not require permanent deletion, or that the damage have meaningful value to the owner. That said, the trial record demonstrates that defendant's complete erasure of the SSD in the MZ laptop caused damage within the

---

[7] The advancement of technology in the intervening decade since *Citrin* was decided such that erasure of the MZ laptop no longer required use of an externally obtained "wiping" program should not change the result in this case from the outcome in *Citrin*; as argued above, to hold otherwise would contravene the clear meaning and intent of the statute.

[8] The undisputed evidence at trial regarding whether a transmission could be internal was from the testimony of the government's expert witness, Melanie Maugeri. Ms. Maugeri testified that to cause the deletions the "internal components would transmit a signal to the SSD," and she confirmed that a signal is a command. (Tr. 229:16-23.)

UNITED STATES' RESPONSE TO DEFENDANT'S CLOSING ARGUMENT
CR 16-172 JD                                      5

meaning of the CFAA in several respects, and also that defendant caused the "permanent deletion" of data that had "meaningful value to the owner."

The case law does not support defendant's argument that there must be permanent deletion of data meaningful to the owner. Neither of the cases cited by the defense, *Citrin* or *Satmodo*, support the "meaningful value" element which the defense attempts to import into the statute. *Id., citing Citrin*, 440 F.3d at 419, 421; *Satmodo, LLC v. Whenever Commc'ns. LLC*, No. 17-CV-0192, 2017 WL 1365839, at *5 (S.D. Cal. Apt. 14, 2017).[9] Nonetheless, it is clear from the trial record, including Dumont's testimony, that the data defendant erased had "meaningful value" to MZ; among other purposes, MZ could have utilized the permanently deleted data in its efforts to ascertain the scope of defendant's conduct,[10] an effort to which the company ultimately devoted (conservatively) *at least* 80 employee hours – two full work weeks – and tens of thousands of dollars. (Tr. 33:2-14; 46:1-2; 47:6-7; 48:15-49:5; Exs. 13. 13A.) Information about the security of a Silicon Valley company's intellectual property is of enormous and undisputed value. By wiping and reformatting his computer, defendant permanently deleted data that MZ could have used to learn what information defendant had accessed and what he did with that information.

The loss of the Meraki system illustrates that defendant caused damage to data on two levels: wiping of the program itself, and of the data the program would generate. Defendant impaired the

---

[9] In *Citrin*, as here, the data that was deleted did in fact have meaningful value – it was "data that [Citrin] knew the company had no duplicates of and would have wanted to have – *if only to nail Citrin for misconduct*." *Citrin*, 440 F.3d at 421 (emphasis added). In *Satmodo*, the plaintiffs alleged that defendants "inhibited Plaintiff's advertisements from being displayed online, essentially causing Plaintiff's premature exclusion from the market and causing a loss of sales and profits." *Satmodo*, 2017 WL 1365839, at *5. The *Satmodo* court dismissed the plaintiff's CFAA charges, however, on the grounds that the plaintiff had "not pled any facts sufficient to state a claim for damages [under the CFAA.]" *Id*. Neither ruling discusses the "meaningful value" of the data or adds such a requirement to the statutory text. And *Citrin* is clear that the data may be meaningful to the employer even if only to "nail" the employee for misconduct.

[10] Even deleted data that was available to MZ elsewhere constitutes damage. Defendant testified that he merely took screenshots of the Tableau database, (Tr. 276:8-278:5), and the defense argues that deletion of these files cannot constitute damage under the CFAA because they were "mere electronic copies." Dkt. 105 at 15. Even assuming that defendant's story is true – a stretch given the defendant's poor credibility – the defense's argument is illogical. Any copies of Tableau data, whether screenshots or complete reports, remained the property of MZ. MZ had, and continues to have, a critical interest in knowing which sensitive Tableau reports the defendant obtained, reviewed, and copied to any number of external storage devices. Through his obliteration of the MZ laptop drive and the resulting erasure of the sensitive data and metadata, defendant caused damage.

availability and integrity of the Meraki data because his actions to wipe the MZ laptop interfered with the normal operation of the software; defendant also impaired the integrity of the data which Meraki would have generated and sent to MZ had it remained installed.  Thus, defendant's contention that "deleting Meraki itself is no different from deleting a licensed copy of Microsoft Word," (Dkt. 105 at 15), misses the point.  Defendant's conduct ensured that the Meraki software was no longer on the MZ laptop, and thus caused it to fail to gather data on MZ's behalf.  Similarly, the erasure of the SSD ensured that all applications, files, and documents were gone, but it also permanently deleted the data the MZ laptop had gathered about those applications, files, and documents.

Recognizing that the government proved "permanent deletion" of data with "meaningful value," (which is more than the statute requires), defendant argues that "deletion of logfiles" should not constitute a federal offense.  Dkt. 105 at 15.  The United States' position is that the complete erasure of the SSD is damage.  The logfiles and Meraki data deleted by defendant were part of the damage and were data that was permanently lost and that MZ very much wanted in order to assess the scope of defendant's conduct.  *See, e.g., Citrin*, 440 F.3d at 421.  The erasure of the MZ laptop, including the permanent loss of the laptop's "digital footprint," plainly satisfies the CFAA.

### IV.   THE DAMAGE DEFENDANT CAUSED IS EXACTLY WHAT HE INTENDED.

The statute requires that defendant intend the damage he caused.  The evidence establishes that defendant intended to erase the MZ laptop.  As established at trial, the MZ laptop itself offered him multiple opportunities to exit out of the erasure process, but he persisted.  (Tr 202:10-203:23; Ex. 19.04.).  Thus, the evidence established that defendant intended to cause the damage he did.  Ignoring these plain facts (to which he admitted), defendant again asks the Court to impose a higher burden on the government than the statute requires by asserting that there are competing stories as to why defendant acted as he did and suggesting that the Court has to make a credibility determination in order to decide what defendant intended.  The statute does not require the government to prove *why* defendant caused the damage, only that he intended to cause it.  Defendant appears to confuse motive and intent.  While defendant disputes that he was motivated by a desire to hide his theft of trade secrets and, instead, by an effort to concealing his viewing of pornography, there is no dispute that his intent was to erase and

reformat his MZ laptop so that all of the data on it was permanently removed.

As set out at length in the government's earlier briefing, Dkt. 104, defendant's *intent* was to erase the entire contents of the MZ laptop, and he achieved that through a series of commands to wipe the MZ laptop, followed by commands to cause reinstallation and then his use of an external drive to put files back on the MZ laptop. His *motive* was to hide his misconduct regarding MZ information that he accessed and then utilized in efforts to start his own competing gaming company in China. As an Operations specialist at MZ – and one out of a job there – the marketing and sales data in Tableau was not relevant to defendant's work in July 2015. The data defendant gathered from Tableau formed the basis of his pitch discussions (in WeChat) and presentations (the Draecana PowerPoint found on his personal computer) to investors as he attempted to launch a competing gaming company in China.

Defendant's pornography story should be discounted as the lie it is. It is also a very problematic lie, because it concedes enough to make defendant criminally liable. Although defendant repeatedly seeks to cast this case as being about the deletion of files so that he can argue that the CFAA does not reach that conduct, his own story makes clear that this case is not about file deletion:

> MR. RIORDAN: Well, we've heard some testimony today about deleting specific files. Did you attempt to locate and specifically delete the photos and the browser history?
>
> THE WITNESS: Well, technically it's not possible.
>
> Q. And why is that?
>
> A. So a few things. One is, even you go to the browser, delete the history and delete the cache file, the files are still there.
>
> And second problem is, when I was open my ex-girlfriend's picture, the picture will cache somewhere on the laptop. But for me there's no way for me to figure out where it was.

(Tr. 290:10-20.) On questioning from the court, the defendant elaborated:

> THE COURT: You're telling me you could not find out where a photo was cached on a Mac laptop?
>
> THE WITNESS: It's not easy.

(Tr. 291:4-6.) Based on the defendant's own testimony, he intentionally chose to wipe the entire contents of the MZ laptop; not only the porn files with which he claims he was concerned, but also data

1  belonging to MZ, which was permanently and irretrievably destroyed.[11]  Defendant knew this would be
2  the result of wiping and reinstalling the laptop, and his own testimony makes clear that he did this to
3  hide evidence from MZ.  In his story, the wiping was so that he could reap the financial benefit of the
4  severance agreement MZ extended to him.[12]  Yet his story backs him in to a corner, because it required
5  him to admit that he intended to damage the MZ laptop in precisely the way he did.

6        The defense argues that defendant's decision to wipe the entire MZ laptop cuts both ways.
7  "Why not try to erase the evidence of proprietary information alone, thereby avoiding the firestorm
8  caused by the wholesale erasure?" Dkt. 105 at 17.  This is a red herring; had defendant done so, it
9  would still have resulted in intentional damage to MZ's data within the meaning of the CFAA.  In fact,
10 had MZ discovered that defendant had securely deleted only certain files from the MZ laptop – a
11 possibility given the intensity of the company's scrutiny regarding defendant's departure – it would
12 arguably have created just as much of a "firestorm."  The defense goes on:  "But the cookie crumb
13 problem also supports an inference of innocence. . . The former theory of defendant's intent is no more
14 convincing than the latter." Dkt. 105 at 17-18.  Unfortunately for defendant, his own lies and shifting
15 explanations for his conduct fatally undermine the theory of intent his counsel advanced at trial.

16       The Court should not credit defendant's self-serving testimony regarding his motive to wipe the
17 MZ laptop.  In addition to being only the latest of defendant's many explanations for his conduct,
18 defendant's assertion that he feared that MZ would discover the alleged porn and clawback his stock
19 options is not credible.  To the contrary, the weight of the evidence strongly supports the government's
20 theory that defendant had misappropriated MZ data for his own private purposes and was attempting to
21 cover his tracks.  In the end, whatever defendant's motive, it does not matter *why* he wiped and
22 reformatted the MZ laptop; it matters only that he knowingly entered the commands, and that in so
23 doing, he intentionally caused damage to data owned by MZ.  The record from trial overwhelmingly

---

[11] Now, defendant says the government must prove precisely what damage he intended, *i.e.*, if the government's theory is that he intended to delete log files, then it must prove that is exactly what he intended.  Again, defendant expands the statutory requirements and puts too heavy a burden of proof on the government.  Regardless, it is clear beyond any doubt defendant intended to wipe all of the data on the MZ laptop, and the government proved that.  Defendant admitted it as well.

[12] Defendant was trying to benefit at MZ's expense, even under his made-up story.

UNITED STATES' RESPONSE TO DEFENDANT'S CLOSING ARGUMENT
CR 16-172 JD                                          9

demonstrates that this was in fact the case.

## V. CONCLUSION

The evidence at trial proved each element beyond a reasonable doubt.  The Court should find defendant guilty.

DATED: September 22, 2017                    Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

  /s/
JOHN H. HEMANN
JOSEPH E. SPRINGSTEEN
LAURA VARTAIN
Assistant United States Attorneys

UNITED STATES' RESPONSE TO DEFENDANT'S CLOSING ARGUMENT
CR 16-172 JD                                    10