DENNIS P. RIORDAN, CA Bar No. 69320
    dennis@riordan-horgan.com
**RIORDAN & HORGAN**
523 OCTAVIA STREET
SAN FRANCISCO, CA 94102
TELEPHONE:  415.431-3472
FACSIMILE:   415.552.2703

THOMAS F. CARLUCCI, CA Bar No. 135767
    tcarlucci@foley.com
JAIME DORENBAUM, CA Bar No. 289555
    jdorenbaum@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET
SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

Attorneys for Defendant
JING ZENG

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 16-00172 JD |
| Plaintiff, | **ZENG REPLY** |
| vs. | Judge: Honorable James Donato |
| JING ZENG, | |
| Defendant. | |

4829-8718-3184.1

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

    A.    Transmission ............................................................................................. 2

        1.    *Plain Meaning* ................................................................... 3

        2.    *Legislative History* ........................................................... 4

        3.    *Rule of Lenity* .................................................................. 5

    B.    Damage ..................................................................................................... 6

        1.    *Log Files* .......................................................................... 8

        2.    *Meraki* ............................................................................. 9

        3.    *The Timing of Deletion* ................................................... 9

    C.    Intent ..................................................................................................... 10

    D.    The Government's Uncharged Offense Theory ..................................... 12

CONCLUSION ......................................................................................................... 13

4829-8718-3184.1

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

**Federal Cases**

5

*Am. Broad. Cos. v. Aereo, Inc.*,
    134 S. Ct. 2498 (2014) ..............................................................................4

6

7

*Dedalus Found. v. Banach*,
    No. 09-CV-2842, 2009 WL 3398595 (S.D.N.Y. Oct. 15, 2009) ..........................3

8

9

*International Airport Centers, LLC v. Citrin*,
    440 F.3d 418 (7th Cir. 2006) ................................................................2, 3

10

*Meridian Fin. Advisors, Ltd. v. Pence*,
    763 F. Supp. 2d 1046 (S.D. Ind. 2011) ........................................................3

11

12

*Pacific Aerospace & Electronics, Inc. v. Taylor*,
    295 F. Supp. 2d 1188 (E.D. Wash. 2003) ....................................................3

13

14

*Shaw v. Toshiba America Information Systems, Inc.*,
    91 F. Supp. 2d 926 (E.D. Tex. 1999) .........................................................3

15

*Sheppard v. Rees*,
    909 F.2d 1234 (9th Cir. 1989) ..................................................................8

16

17

*Strickland v. Washington*,
    466 U.S. 668 (1984) ..............................................................................8

18

19

*Transmission Access Policy Study Group v. FERC*,
    225 F.3d 667 (D.C. Cir. 2000) .................................................................4

20

*United States v. Cassel*,
    408 F.3d 622 (9th Cir. 2005) ...................................................................3

21

22

*United States v. Korab*,
    893 F.2d 212 (9th Cir. 1989) ...................................................................4

23

24

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) (en banc) ..........................................2, 6, 8, 12

25

*United States v. Santos*,
    553 U.S. 507 (2008) ..............................................................................5

26

27

*United States v. Sutcliffe*,
    505 F.3d 944 (9th Cir. 2007) ...................................................................4

28

4829-8718-3184.1

**Federal Statutes**

18 U.S.C.
§ 1030(a)(5)(A) .................................................................................................1, 6, 8
§ 1832(a)(2) ...............................................................................................................1

**Other Authorities**

XVIII Oxford English Dictionary 414 (2d ed. 1989) ...............................................3

Jason Fitzpatrick, *What Should I Do with My Work Laptop Before I Leave My Job?* ............................11

Michael Duran, *How to Digitally Erase All Your Stuff When You Quit Your Job* ...................................11

S. Rep. 104-357 (1996) ...........................................................................................4, 5

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

# INTRODUCTION

Federal authorities arrested defendant Jing Zeng in the summer of 2015 on a charge of economic espionage under 18 U.S.C. § 1832(a)(2).  That charge was abandoned when their investigation failed to produce proof to support that serious allegation.  Two counts of unauthorized access of a computer in violation of § 1030(a)(2)(C) were subsequently charged and later abandoned, leaving Mr. Zeng to face a single charge of damaging a computer under § 1030(a)(5)(A).

The text of the statute requires damage caused by a transmission of a code or command "to a computer." To transmit something means to transfer or send it from one place to another.  Transmitting something to a computer means sending something from another place to a computer.  The statute, on its face, does not cover "internal transmissions" within a computer.

The trial evidence established that in this case there was no transmission, as that term is statutorily defined.  As a consequence, the government is now forced to take extraordinarily broad legal positions in order to salvage a conviction in this case.  The government urges this Court to rule that the actus reus of the a § 1030(a)(5)(A) violation—which requires "transmission" of some code or command "to a computer"—need consist of nothing more than hitting a delete button.  *See* Dkt. 104, Govt. Closing Br. at 7 ("[T]he Court should not read into the statute either any requirement that the transmission occur from an external source, *or any requirement that the command be more than hitting delete*….") (emphasis added).

If striking "delete" on a company computer can be the actus reus of a § 1030(a)(5)(A) violation, as the government claims, then the knowledge element of the offense consists of nothing more than an awareness that one is striking that key on purpose.  The government also appears to argue (albeit less clearly) that erasing data at all on a computer constitutes "damage."  Given that position, the mens rea element of the offense is simply an intent to erase data, the precise mental state that accompanies any purposeful, as opposed to accidental, striking of a delete key.  Taken together, the government's arguments necessarily mean that anytime an employee deletes anything on his or her work computer

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

without first obtaining permission, he or she commits a federal crime.

Courts must "construe criminal statutes narrowly so that Congress will not unintentionally turn ordinary citizens into criminals."  *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc). In the history of the CFAA, no federal court has accepted the arguments now urged by the government. This Court should reject them as well.  Mr. Zeng should be acquitted.        .

## ARGUMENT

### A.    Transmission

The text of the statute requires transmission of a code or command "to a computer."  To transmit something means to transfer or send it from one place to another.  Transmitting something to a computer means sending something from another place to a computer.  The statute, on its face, does not cover "internal transmissions" within a computer.  It requires some external transmission.  That is what the Seventh Circuit held in *International Airport Centers, LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006). Other federal courts agreed.

In its pretrial briefing, the government sounded at least some notes of caution and moderation as to the theory on which they would pursue the defendant's conviction.  In its pretrial brief, the government accepted the legal proposition that the Seventh Circuit's decision in *Citrin* provides the correct interpretation of the "transmission" element.  *See* Dkt. 87, Govt. Pre-Trial Br. at 11.  While assuming arguendo that merely using a computer's own delete function might not constitute a transmission, the government said that this Court would not have to decide that issue.  The government stated that it would prove that Zeng "transmitted a series of codes or commands *to the MZ laptop*" and that his transmission employed "an external device or connection."  *Id*. at 12–13 (emphasis added).

But the evidence apparently did not come in the way the government expected.  At trial, the evidence showed that Zeng wiped the laptop using only its internal, native erase function.  The government thus now attempts to walk back its prior acceptance of *Citrin*.  It states that the relevant

ZENG REPLY
Case No. CR 16-00172 JD

portions of *Citrin* are "dicta"[1] and are "not binding on this Court." Govt. Closing Br. at 8 n.7. It is true that *Citrin* is not binding, since it was decided by another circuit. But *Citrin* was correctly decided. And no federal court has disagreed. *See Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1061–62 (S.D. Ind. 2011) (citing *Citrin* and discussing the transmission requirement); *Dedalus Found. v. Banach*, No. 09-CV-2842, 2009 WL 3398595, at *4 (S.D.N.Y. Oct. 15, 2009) (same). The government cannot cite *a single case* holding that using a computer's own native erasure function constitutes a transmission.[2]

Despite the dearth of support, the government now rests its entire case on the proposition that using a computer's own internal commands constitutes an "internal transmission." It says that this Court "should not read into the statute" a requirement of external transmission. There is no need to read such a requirement into the statute. That is what both the language and logic of the statute already require.

### 1.    *Plain Meaning*

*First*, an external transmission is what the plain text of the statute requires. Section 1030(a)(5) requires transmission of something "to a protected computer." The plain meaning of the verb "transmit" is "to cause (a thing) to pass, go, or be conveyed to another person, place, or thing; to send across an intervening space; to convey, transfer." XVIII Oxford English Dictionary 414 (2d ed. 1989) (first definition). To transmit something *to* a computer means to transfer something to a computer. What is required, in other words, is the conveyance of something to the computer that was not previously on the

---

[1] Parties often try to evade the import of cases not helpful to their position by invoking the "dicta" label. *See United States v. Cassel*, 408 F.3d 622, 633 n.9 (9th Cir. 2005) (citing *United States v. Johnson*, 256 F.3d 895, 916 (9th Cir. 2001) (en banc) (plurality op. of Kozinski, J.)). Under the Ninth Circuit's definition of dicta, any considered portion of a published opinion is part of the holding—even if not every word is logically necessary to the result.
The requirement of external transmission was a core part of the holding in *Citrin*. The *Citrin* court decided what "transmission" means, then applied that definition to the facts.

[2] The government's strongest legal authority on transmission is apparently *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 926 (E.D. Tex. 1999). *See* Govt. Closing Trial Br. at 9 n.8. But that case involved an external transmission of damaging code to computers via floppy disk. While the *Shaw* court rejected the idea that there must be some "computer-to-computer" transmission, it still rested liability on an external transmission. The only other legal authority cited by the government on transmission is *Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F. Supp. 2d 1188, 1195 n.15 (E.D. Wash. 2003). But that was a civil suit alleging unauthorized access—it did not even involve § 1030(a)(5). It merely cited *Shaw* in passing in a footnote.

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

computer.

This plain meaning of transmission—sending from one place to another—is widely used in federal law.  For example, "transmission" of electricity in interstate commerce means sending electricity from one state to another.  *Transmission Access Policy Study Group v. FERC*, 225 F.3d 667, 692–93 (D.C. Cir. 2000).  In copyright law, "transmission" of a performance means sending images or sounds "beyond the place from which they are sent."  *Am. Broad. Cos. v. Aereo, Inc.*, 134 S. Ct. 2498, 2506 (2014).  The "transmission" of a threat in interstate commerce requires that the threat be sent from one state to another—an "internal transmission" within a state is not a federal crime.  *United States v. Sutcliffe*, 505 F.3d 944, 952–53 (9th Cir. 2007); *United States v. Korab*, 893 F.2d 212, 213–15 (9th Cir. 1989).  There are literally hundreds of federal cases in numerous contexts affirming the same point—to transmit something means to send it from one place to another.

Application of this plain-meaning definition is not complicated.  To transmit something "to a computer" means sending or transferring something from another place to the computer.  When a person downloads a file from email and saves it to her computer, she transfers that file to her computer.  But when she moves a file already on her computer from one folder to another, she does not transfer a file to her computer.  And when a person uses a delete command to erase a file or empty her trash, she does not transfer anything to her computer.  She simply deletes.

### 2.     *Legislative History*

*Second*, if there were any doubts about the plain meaning, the legislative history of the statute resolves those doubts.  The primary purpose of the statute is to protect computers from hacking damage involving viruses and worms and the like.  Orin S. Kerr, *Computer Crime Law* 80 (2d ed. 2009).  As Congress itself has explained, the statute primarily seeks to punish those who "transmit harmful computer viruses."  S. Rep. 104-357 at 4 (1996); *see also id.* (stating that the statute penalizes "any person who uses a computer in interstate commerce or communications to cause the transmission of a computer virus or other harmful computer program").

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

The government, for its part, relies on a bunch of irrelevant legislative history about "insiders" and "outsiders." It is undoubtedly true that Congress amended the statute to make sure that "malicious insiders" are also covered. *Id.* at 9. That is why the damage provision of the statute does not require unauthorized access. Thus, under the statute, a rogue employee would violate the statute by sending malware to co-workers over email or by sending a virus to the company's server. No one doubts liability in such cases—of course the statute covers some "insiders," i.e., those who have authorized access and use that access to cause damage. But that does not eliminate the requirement of transmission. An employee who sends a virus to a company computer is guilty, but an employee who merely deletes files on his laptop is not.

### 3.   *Rule of Lenity*

*Third and finally*, if there is any remaining doubt regarding the meaning of transmission, that doubt must be resolved in favor of lenity. *United States v. Santos*, 553 U.S. 507, 514 (2008) ("Under a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."). The text of the statute does not, on its plain terms, cover transmissions *within* a computer—it only covers transmissions *to* a computer. No federal court has held that using a computer's own internal and native commands constitutes a transmission. Nonetheless, even assuming arguendo that there is some plausible reading of the statute that covers "internal transmissions," at a minimum, the statute is ambiguous on this point. That ambiguity must be resolved by reading the statute narrowly. If Congress wants to cover damage by internal commands, it could easily amend the statute to do so, but that is not what the statute says now.

The government's argument would effectively read the transmission element out of the statute. And indeed, the government suggests that this Court should not worry about such a result. It states that because the intent elements are satisfied, a broad reading of transmission will not stretch the statute too far. Govt. Closing Br. at 7–8. According to the government: "So long as the internal transmission satisfies the other elements, including intentional damage, internal transmissions are criminal." *Id.* at 9.

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

The gist of the government's argument appears to be that as long as this Court is convinced that there was intentional damage—and thus that the defendant's conduct was not innocuous—it need not worry about the transmission element.

That logic is fallacious, and it turns the rule of lenity on its head. A disgruntled employee who smashes his laptop with a hammer is not engaging in innocuous conduct, but he still does not commit a crime under § 1030(a)(5). He may be civilly liable or liable for state crimes, but he would be innocent if charged under the CFAA. The reason he would be innocent is the transmission element—which is an essential element of the offense created by Congress. Not all misconduct needs to be a federal crime, and not all computer damage is covered by § 1030(a)(5). Congress sensibly limited that provision to a certain type of conduct, namely causing damage by sending some harmful code "to a computer." That is not what Zeng did.

The Ninth Circuit has stated that, in interpreting the CFAA, courts should avoid constructions that would risk criminalizing innocuous conduct. *Nosal I*, 676 F.3d at 863. That remains true, and this Court should keep that warning in mind when interpreting the statute. But in the final analysis, guilt or innocence in this case does not depend on a finding of innocuousness. The question is not whether Zeng's conduct was wholly innocuous in the moral or metaphysical sense of that word. The question is whether he violated 18 U.S.C. § 1030(a)(5)(A). And in light of the evidence presented at trial, the answer is now clear: He did not.

**B.    Damage**

The government's arguments on damage remain slippery. Nearly the entire portion of the government's brief on damage is devoted to a narrative describing MZ's response when it discovered the laptop had been wiped—"911 panic mode," "four alarm fire," and so on. It is hard to see how any of this is relevant to the question presented. The government recounts, for example, that MZ employees learned that Zeng had installed a default OS that was not an MZ "branded environment." It recounts how the IT guy could not log in with his normal admin credentials and had to use a different process. It

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

recounts how worried MZ executives were.  None of this, however, constitutes damage under the CFAA.

The larger problem is that the government never presents any legal argument about what counts as damage.  Remarkably, in its entire section on the damage element, the government does not cite a single case supporting its interpretation of the statute.  *See* Govt. Closing Br. at 11–15.  That is because the government never states what its interpretation of the statute is.  The interpretive question is admittedly difficult, but analytically, there are two questions to ask:

- Does deletion of any file on a computer constitute "damage"?

- If not, what is the legal dividing line between deletions that constitute "damage" and those that do not?

Answering these questions is not easy, in part because the case law is fairly sparse.  Nonetheless, throughout these proceedings Zeng has taken a consistent legal position.  The first question must be answered in the negative.  As to the second question, deleting something on a computer only constitutes damage if the deleted material is not recoverable and has some meaningful value to the computer owner.

The government has never clearly stated a position on these questions.  The government appears to suggest that the first question should be answered in the affirmative.  If that were true, then admittedly Zeng's wiping the laptop would constitute damage.  It would also mean, however, that the statute would be rendered grossly overbroad and unconstitutional.  Avoiding that result requires answering the second question, but that involves a difficult line-drawing task that the government seeks to avoid.

In any event, the government appears to make two main arguments about what damage Zeng caused when he wiped the laptop.  First, it argues that the deletion of the laptop's log files constitutes damage.  Second, it argues that Zeng damaged the laptop by removing the licensed Meraki program from the laptop, because there was data that Meraki was not able to capture as a result.  Govt. Closing Br. at 12.  But the information alleged only that Zeng deleted and destroyed "Machine Zone software," raising an issue of due process notice were the Court to rely upon either theory to convict Zeng.

4829-8718-3184.1

*Strickland v. Washington*, 466 U.S. 668, 685 (1984) (noting that a fair trial is "one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues *defined in advance of the proceeding*" (emphasis added)); *Sheppard v. Rees*, 909 F.2d 1234, 1237 (9th Cir. 1989).

Constitutional issues aside, there are problems with the government's two arguments, independently and collectively.

**1.    *Log Files***

As Zeng argued in his primary brief, the mere deletion of log files, without more, cannot constitute damage under the CFAA.  "Log files" is simply a general term that covers all of the record of activity that a computer (temporarily) logs and stores.  The primary purpose of log files is to help IT professionals diagnose and fix problems.  When a computer crashes, for example, the log files can be used to help determine what triggered the crash.  The government has argued only in a general fashion that MZ lost access to all log files, and therefore that Zeng is guilty.  It has not identified any particular log files that were lost, much less explained why they were sufficiently important that their loss constituted real "damage" to the computer.  The fact that MZ "panicked"—in the words of its own employees—does not show that the log files themselves were intrinsically valuable such that their deletion caused damage.  The panic was induced not by the loss of log files, but rather by the fear that trade secrets had been lost.

Most log files are utterly trivial, and they are deleted by employees on a daily basis.  An employer bent on total knowledge of, and control over, the computer-related conduct of its personnel could enact a policy of forbidding any and all deletions of log files without specific supervisorial authorization.  Under the government's construction of § 1030(a)(5)(A), all such violations would place the employee not only at risk of company discipline but federal prosecution as well.  The Ninth Circuit warned in *Nosal I*, however, that "basing criminal liability on violations of private computer use policies can transform whole categories of otherwise innocuous behavior into federal crimes simply because a computer is involved."  676 F.3d at 860.  Again, the government's overly broad definition of an element

ZENG REPLY
Case No. CR 16-00172 JD

of the CFAA should be rejected.

### 2.   *Meraki*

The government's argument about Meraki simply does not work.  Meraki itself was a licensed software, so deleting Meraki itself cannot constitute damage—it is undisputed that MZ could simply re-install Meraki if it wanted to.  So the government instead argues that deleting Meraki caused "damage" because it prevented Meraki from tracking *future* activity on the computer.  This makes no sense.  For starters, Meraki never stored information locally, so deleting Meraki did not delete any material from the computer itself.  But more importantly, preventing the creation of information on a computer or system is not the same as destroying information.

Consider a hypothetical involving a surveillance camera.  If that camera has made recordings onto a hard drive, someone who destroys the hard drive would impair the availability of that data.  But turning off the camera does not damage the hard drive, nor does it delete any information—it merely prevents new recordings.  Similarly, when an employee uses a private browsing mode on his web browser, he prevents the recording of certain information—namely, the browser log files that record browsing information.  But he does not thereby delete data or damage his laptop.  In short, disabling a tracking program might prevent certain computer files from being created, but it does not delete or destroy files.

### 3.   *The Timing of Deletion*

But there is another problem with the government's argument regarding the timing of deletion—what was deleted when.  Zeng wiped his laptop on the afternoon of July 12.  Prior to that time, it is undisputed that Meraki was functioning normally and transmitting data to MZ's servers.  (109:15–18.)  After July 12, when Meraki was wiped from the laptop, the laptop itself began creating log files again, so that when MZ received the laptop back, it contained log files since July 12.  (105:6–9.)  In short, Meraki was tracking data until Zeng wiped the computer, and after he wiped the computer, the log files were tracking.  Nothing about Meraki was lost prior to July 12, and no log files were lost after July 12.

ZENG REPLY
Case No. CR 16-00172 JD

In light of that fact, it remains unclear what the damage is here.  Neither Meraki nor the log files have intrinsic value to MZ.  As the government argues, both had value because they tracked employee computer usage—and indeed, as the government's witnesses explained, they had substantially overlapping functions.  MZ's IT professional explained that the log files on the laptop itself were important because they could help MZ to indicate activity on the computer.  (104:10–24.)  And he similarly indicated that MZ used Meraki to "track" the computer and its activity, including "what's inside that machine and what's going on in that machine."  (100:19–101:1.)  But Meraki was tracking until July 12, and the log files were tracking after.  The government has offered no clear theory about what information was lost.

Information is not impaired or destroyed if it exists elsewhere in another form.  The government has not proven beyond a reasonable doubt that Zeng deleted any valuable information that did not exist elsewhere.

### C.     Intent

As discussed above, the government has argued that the erasure of log files can constitute damage. Under that theory, the government must prove that specific erasure was Zeng's conscious object when he wiped the laptop.  The government makes no such argument in the "Intent" section of its brief. Govt. Closing Br. at 16-20. Furthermore, the government never asked Zeng any question about log files during his cross-examination. Alternatively, if the government's theory is that the damage in this case was the deletion of Meraki and the consequent disabling of its tracking function, there is no proof of that mental state on Zeng's part.

Once again, the chronology of events undermines the government's theory.  The evidence at trial showed that Zeng accessed Tableau on July 8, 9, and 10.  But Meraki was not deleted until July 12.  So at the time Zeng accessed Tableau, Meraki was still functioning and tracking his activity.  By the time he wiped his laptop and erased Meraki, any information about his Tableau access had already been sent to MZ—and indeed, as the evidence at trial made clear, MZ had no trouble determining exactly when

ZENG REPLY
Case No. CR 16-00172 JD

and how Zeng had accessed Tableau.  It makes no sense to say that Zeng's intent was to hide the tracks of his Tableau access when, by that time, those tracks had already been recorded, transmitted, and stored elsewhere.

As a fallback position, the government contends that the Court should find Zeng committed the charged offense even if it accepts the defendant's version of the facts; i.e., that he wiped the computer in order to hide evidence of porn and other embarrassing personal materials.  "Even under Zeng's latest story that he erased to hide 'porno,' this is also knowing, intentional conduct.  Zeng intended beyond a reasonable doubt to damage the MZ laptop."  Govt. Closing Br. at 16.  By arguing that the unauthorized erasure of pornography by hitting a "delete" button on a company computer is a federal crime, the government is urging upon the Court the broadest possible reading of § 1030(a)(5).  It can be said with confidence that Congress did not intend to criminalize the erasure of pornography. Deleting porn or personal files from a company laptop does not damage the laptop, so proof of intent to delete porn does not prove the intent element.

More generally, the government argues that Zeng's own testimony about his own intent should not be credited because he changed his story, and because his explanation at trial was inherently incredible.  Given the circumstances of this case, it is perfectly understandable why he changed his story.[3]  And it is not inherently incredible that an employee, worried about personal use on a company laptop, would attempt to wipe it before returning it.  That is precisely what many experts recommend employees do.[4]  That may be bad advice, but following it is not a crime in the absence of intent to cause

_____

[3] The government has also at times suggested that if Zeng only wanted to delete porn (and associated cookie crumbs), he could and should have simply installed a secure erase program of some sort to target only those files. But if Zeng had done so, then he more likely would have "transmitted" something to the computer.  And under the government's own argument, merely deleting porn constitutes both damage and intent to damage.

[4] *See* Michael Duran, *How to Digitally Erase All Your Stuff When You Quit Your Job*, Wired (Aug. 23, 2016) ("You may not think securely wiping your computer clean is necessary, but you have no idea what's going to happen to that computer after you hand it in. . . . It's safest to leave no trace."); Jason Fitzpatrick, *What Should I Do with My Work Laptop Before I Leave My Job?*, Lifehacker (Aug. 30, 2010) (stating that the "best bet" for safety of personal information is to wipe your laptop before turning it in, and noting that most companies wipe laptops on return anyway).

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

damage.  The government has not proven that intent here.

### D.    The Government's Uncharged Offense Theory

With respect to the intent element, the government also argues that Zeng wiped his laptop in order to hide evidence that he had accessed Tableau for forbidden purposes.  Govt. Closing Br. at 16; *see also id*. at 17 ("Zeng Damaged the MZ Laptop to Erase Evidence of Theft of MZ Information.") The government thus claims that Zeng committed the crime of damaging his computer in order to cover up a trade secrets violation he had committed.

If the government were urging upon the Court as a necessary element of a § 1030(a)(5)  offense that the computer "damage" be committed for the purpose of covering up an independent criminal violation, that position would impose a significant limitation of the scope of the statutory provision. But, of course, the government is proposing no such thing. Rather, the government implies by its claim of trade secret violation that the Court need not worry about the nearly limitless expansion of the boundaries of the "damage" statute it proposes because the government will only apply the law to those whose pattern of conduct truly merits prosecution. But *Nosal I* rejected that precise argument for broadening a different provision of the CFAA.  676 F.3d at 862 ("The government assures us that, whatever the scope of the CFAA, it won't prosecute minor violations.  But we shouldn't have to live at the mercy of our local prosecutor.").  *Nosal I* also rejected the approach of other circuits that "looked only at the culpable behavior of the defendants before them, and failed to consider the effect on millions of ordinary citizens" of a broad reading of the CFAA.  *Id*. at 862–63.

Of equal importance, as a factual matter, the government has not carried its burden on its claim of a trade secret violation.  It is not enough, as the government argues, that its trade secret theory is "consistent" with the evidence.  Govt. Closing Br. at 16.  The government's theory must be proven beyond a reasonable doubt, supported by actual evidence rather than innuendo and speculation.  Zeng was arrested on a trade secret allegation, but the government's subsequent investigation failed to find proof to support that charge, which was never brought in this Court. The government's effort to jaundice

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

the Court's decision on the important issues of statutory interpretation before it by hypothesizing Zeng's commission of an uncharged offense must be ignored.

### CONCLUSION

For the reasons stated above and in his prior briefing, this Court should acquit defendant Zeng of the offense charged.

Dated:  September 22, 2017                    Respectfully submitted,

DENNIS P. RIORDAN
DONALD M. HORGAN
TED SAMPSELL-JONES
RIORDAN & HORGAN

THOMAS F. CARLUCCI
JAIME DORENBAUM
FOLEY & LARDNER LLP


 /s/ Dennis P. Riordan
DENNIS P. RIORDAN

Attorneys for Defendant
JING ZENG

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served to all counsel of record, listed below, who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil L.R 5-1.  The undersigned further certifies that a true and correct copy of the foregoing document has been served via mail and e-mail on the counsel of record who are not registered participants of the CM/ECF system, listed below.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on September 22, 2017.

/s/ Thomas F. Carlucci

THOMAS F. CARLUCCI

ELECTRONIC MAIL NOTICE LIST

Candace Kelly     Candace.Kelly@usdoj.gov, rosario.calderon2@usdoj.gov

John Henry Hemann     john.hemann@usdoj.gov, jacquelyn.lovrin@usdoj.gov

Joseph E Springsteen     joseph.springsteen@usdoj.gov, CaseView.ECF@usdoj.gov

Laura Elizabeth Vartain Horn     laura.vartain@usdoj.gov, CaseView.ECF@usdoj.gov

Dennis Patrick Riordan     dennis@Riordan-Horgan.com

COURTESY COPY

Chambers Copy
James Donato
United States District Judge
Clerk's Office
San Francisco Courthouse
450 Golden Gate Ave.
San Francisco, CA 94102
Case No. CR 16-00172 JD

ZENG REPLY
Case No. CR 16-00172 JD

4829-8718-3184.1

4829-8718-3184.1